# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
   **Plaintiff,**

 v.               Case No. 06-CR-336

**GABRIEL URBINA**
   **Defendant.**

## SENTENCING MEMORANDUM

Defendant Gabriel Urbina pleaded guilty to conspiracy to distribute 5 kilograms or more of cocaine, contrary to 21 U.S.C. §§ 841(a)(1), (b)(1)(A) & 846, and I set the case for sentencing. As the Supreme Court contemplated in Rita v. United States, 127 S. Ct. 2456, 2465 (2007), I began by considering the pre-sentence report ("PSR") and its interpretation of the sentencing guidelines, then heard the parties' arguments for a guideline departure under U.S.S.G. § 5K1.1 and a non-guideline sentence under 18 U.S.C. § 3553(a). See also Gall v. United States, 128 S. Ct. 586, 596-97 (2007); United States v. Bush, 523 F.3d 727, 729 (7th Cir. 2008).

## I. GUIDELINE CALCULATION

The PSR set a base offense level of 32, U.S.S.G. § 2D1.1(c)(4), then subtracted 2 levels under the safety valve provision, § 2D1.1(b)(11), and 3 levels for acceptance of responsibility, § 3E1.1, for a final level of 27. It then assessed a criminal history category of I, producing an imprisonment range of 70 to 87 months. I found these calculations correct and adopted them without objection.

## II. DEPARTURE

**A.     Substantial Assistance Factors**

The government moved for a 2-level departure under U.S.S.G. § 5K1.1 in order to reward defendant for his substantial assistance.   In ruling on such a motion, I consider:

> (1) . . . the significance and usefulness of the defendant's assistance, taking into consideration the government's evaluation of the assistance rendered;
>
> (2) the truthfulness, completeness, and reliability of any information or testimony provided by the defendant;
>
> (3) the nature and extent of the defendant's assistance;
>
> (4) any injury suffered, or any danger or risk of injury to the defendant or his family resulting from his assistance;
>
> (5) the timeliness of the defendant's assistance.

U.S.S.G. § 5K1.1(a).

I give substantial weight to the government's evaluation of the extent of the defendant's assistance, U.S.S.G. § 5K1.1 cmt. n. 3, but the extent of the departure is within my discretion. In attempting to quantify the departure, I typically use the method suggested by the Seventh Circuit of granting something on the order of a 2-level adjustment for each factor found to be fully present, with a lesser reduction for those factors partially present. United States v. Matthews, 463 F. Supp. 2d 916, 918 (E.D. Wis. 2006).

**B.     Analysis**

In the present case, defendant de-briefed, providing information about his co-conspirators, which was turned over in discovery.  The government believed that his statements contributed to the decisions of those co-actors to enter guilty pleas. Based on this assistance, I awarded 1 level under the first factor because it appeared that defendant's

assistance was significant and useful in obtaining the convictions of others, although the government possessed substantial evidence from other sources, including court-authorized wiretaps. I awarded 1 level under the second factor because the government believed defendant to generally be truthful, although there appeared to be some doubts as to the completeness of his information.[1] I awarded 1 level under the third factor because the cooperation was limited to providing information and assistance in interpreting the intercepted phone calls; defendant engaged in no pro-active cooperation. Finally, I awarded no reductions under the fourth and fifth factors because the record contained no specific evidence of danger or risk, or particular timeliness. Therefore, I granted a total reduction of 3 levels, making the range 51-63 months.

### III. SECTION 3553(a)

**A.  Sentencing Factors**

In imposing the ultimate sentence, the court must consider:

(1)  the nature and circumstances of the offense, and the history and characteristics of the defendant;

(2)  the need for the sentence imposed–

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3)  the kinds of sentences available;

---

[1] Defendant apparently had some reservation in speaking about certain individuals.

3

(4) the advisory guideline range;

(5) any pertinent policy statements issued by the Sentencing Commission;

(6) the need to avoid unwarranted sentence disparities; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

After considering these factors, the court must impose a sentence that is "sufficient but not greater than necessary" to satisfy the purposes of sentencing set forth in § 3553(a)(2). The district court must give respectful consideration to the guidelines in determining a sufficient sentence, Gall, 128 S. Ct. at 594, but it may not presume that the guideline sentence is the correct one, Rita, 127 S. Ct. at 2465. Rather, it is the statute's parsimony provision, quoted above, which serves as the "overarching" command of § 3553(a). Kimbrough v. United States, 128 S. Ct. 558, 570 (2007).

**B. Analysis**

    **1. The Offense**

Defendant supplied cocaine, in nine ounce to one kilogram quantities, to a man named Javier Aguilera, who operated a fairly large-scale drug distribution organization in the Waukesha, Wisconsin area. After Aguilera's arrest on an unrelated matter, defendant distributed cocaine directly to some of Aguilera's relatives and customers. In addition to Aguilera, defendant provided cocaine to about ten others. As indicated above, the government intercepted phone calls pertinent to the conspiracy, and the PSR detailed some of them. The parties agreed that defendant should be held responsible for 5-15 kg of cocaine.

4

### 2. The Defendant

Defendant was thirty-one years old, with no prior record. Born in Mexico, he came to this country in 1993 in order to receive treatment for leukemia. He had fortunately been in remission since that time but continued to receive regular follow-up. He became a citizen in 2004.

Defendant compiled a solid employment record in this country, working as a laborer and on two farms. The operators of one of the farms described him as an excellent employee and a great person to work with.

Defendant married in 2000 but divorced five years later. His ex-wife nevertheless remained supportive, stating that he was a wonderful person. She indicated that they divorced because he could not father children due to his cancer treatment, but that they may reconcile.

Defendant admitted past use of controlled substances, but he did not appear to currently have a serious problem. He expressed a desire to better himself and took available classes at the Dodge County Jail, where he was detained pre-trial for an extended period while this case proceeded. I also received a positive letter from defendant's step-son, then in basic training with the United States Army, who wrote that defendant treated him as his own. Numerous supporters appeared at sentencing.

### 3. The Sentence

The guidelines recommended 51-63 months in prison, after the departure, and I agreed that given the seriousness of the offense a significant period of imprisonment was necessary. Defendant distributed a substantial amount of cocaine over an extended period of time and occupied a position at or near the top of the distribution chain. However, the record contained

5

no other aggravating circumstances, such as violence, weapons or threats. I also saw no evidence that defendant profited all that much, despite the high drug weight. I also took into account the fact that he had served over two years of pre-trial confinement in a local jail, harder time than that spent in a federal prison.

I also considered defendant's positive background – no criminal record, positive work history, strong family ties. These facts suggested that defendant did not pose a significant danger or risk of re-offending. See United States Sentencing Commission, Recidivism and the First Offender 13-14 (May 2004) (noting that the rate of recidivism for a true first offender is 11.7%, much lower than the 22.6% rate for offenders with 1 criminal history point and 36.5% rate for offenders with 2 or more points); United States Sentencing Commission, Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines 12 (May 2004) (noting significantly lower recidivism rates for those employed in the year prior to arrest, and for those who are or were married but later divorced). As discussed above, defendant also cooperated with the government. The 5K1.1 departure and safety valve reduction in part accounted for these positive circumstances, but given the lofty base offense level, the guideline range remained quite high for a non-violent, first-time offender. Further, as I recently explained in United States v. Thomas, No. 08-CR-238, 2009 WL 188037, at *3 (E.D. Wis. Jan. 24, 2009), the drug trafficking guideline may in general be entitled to less respect because it is not based on an empirical approach or Commission research. Rather, it is pegged to the amounts set forth in the statute. See Kimbrough, 128 S. Ct. at 575. In this case, the base level was derived directly from the amount set forth in 21 U.S.C. § 841(b)(1)(A).

Under all the circumstances, I found a sentence of 42 months sufficient but not greater than necessary. The sentence varied from the guidelines by only about 2 additional levels after

6

the departure, and because it was based on the specific facts of the case set forth herein it created no unwarranted disparity.

## IV. CONCLUSION

Therefore, I committed defendant to the custody of the Bureau of Prisons for 42 months. Upon release, I ordered him to serve five years of supervised release, with a drug aftercare and other conditions that appear in the judgment.

Dated at Milwaukee, Wisconsin, this 5th day of March, 2009.

/s Lynn Adelman
_____
LYNN ADELMAN
District Judge

7

Case 2:06-cr-00336-LA   Filed 03/05/09   Page 7 of 7   Document 683